# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINE LENA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-257-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Christine Lena requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id.* §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 30, 1961, and was forty-four years old at the time of the most recent administrative hearing. She has a high school education and previously worked as a sewing machine operator. The claimant alleges she has been unable to work since February 1, 1999, due to a history of stroke with reduced use of the left side of her body (reduced vision in left eye and grip with left hand), memory problems, swelling in her lower extremities, pain in her upper extremities, and seizures with associated dizziness and headaches (Tr. 17).

## Procedural History

On July 31, 2002, the claimant filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, which was denied. ALJ Jodi B. Levine conducted a hearing and found that the claimant was not disabled, but the Appeals Council reversed and a supplemental hearing was conducted. ALJ Levine once again found that the claimant was not disabled on June 29, 2006. This time the Appeals Council denied review, so the ALJ's latter denial of benefits is the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that the claimant had the residual functional capacity ("RFC") to perform sedentary work,

*i. e.*, she could lift/carry no more than ten pounds occasionally and five pounds frequently but needed a sit/stand option and to make postural changes occasionally; could not push or pull with her left arm (and suffered from a 90% limitation in her left arm for reaching, feeling, fingering and grasping); could not work around unprotected heights or on uneven pavement because of limitations in vision and depth perception; and was unable to engage in occupations requiring work around moving machinery, close visual inspection or driving (Tr. 18). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform existing in significant numbers in the regional and national economies, *e. g.*, order clerk and quotation clerk (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence; (ii) by finding she had the RFC to perform substantial gainful activity; and (iii) by failing to properly evaluate her credibility. The Court finds these contentions persuasive.

The claimant received medical treatment at the Carl Albert Indian Health Facility and the Wewoka Indian Health Center from 1982 through 2005 (Tr. 97-181, 234-79, 298-340, 397-425) and emergency treatment on various occasions at Seminole Medical Center and Baptist Medical Center from 1999 through 2003 (Tr. 201-11, 213-30). Treating physicians Dr. Wilfred M. Lundblad, M.D., and Dr. Andrew McKee, M.D., both from the Wewoka Indian Health Center, completed medical source statements evaluating the claimant's

physical functional limitations (Tr. 339-40, 424-25). In September 2004, Dr. Lundblad limited the claimant to lifting and/or carrying less than ten pounds because of side, forearm, and shoulder pain; standing and/or walking continuously for five minutes for up to a total of three hours because of swelling in the feet and ankles; sitting for a total of three hours because of left side weakness and left foot numbness; minimal pushing and/or pulling because of a minimal ability to do so; occasional climbing, balancing, stooping, kneeling, and crouching; no crawling; and limited exposure to heights because of balance and vision problems. Dr. Lundblad opined that the claimant was required to lie down during the workday to manage pain. He concluded that "[l]ifting or pulling cause[d] [the claimant's] arm to get numb and shake and [her] left side to hurt [and] feel tightened" and based his findings on the claimant's "[l]eft hemiparesis from CVA 2-2-03 [and her] seizure disorder." (Tr. 339-40). Dr. McKee completed his medical source statement in September 2005. He opined that the claimant was limited to lifting and/or carrying six pounds frequently and five pounds occasionally; standing and/or walking continuously for twenty minutes and for a total of two hours; sitting continuously and for a total of two hours; limited pushing and/or pulling; occasional climbing, balancing, crouching, crawling, reaching, handling, fingering and feeling; no stooping or kneeling; intolerance to heat and dust; and needed to lie down to manage pain during the work day. Dr. McKee based his conclusions on the claimant's right hemiparesis and seizure disorder (Tr. 424-25).

In evaluating the medical opinions of the claimant's treating physicians, the ALJ made no mention in her decision of the specific limitations they imposed on the claimant but *did*

determine: (i) that Dr. Lundblad's opinions "impose[d] significant restrictions on the claimant's ability to work [but] the absence of evidence of significant residual from the cerebral vascular accident rendered [Dr. Lundblad's] assessment unsupported by the documentary medical evidence[;]" (Tr. 18), and, (ii) that Dr. McKee's opinions that "the claimant was essentially limited to working no more than four hours in an eight-hour workday . . . [was] unsupported by the documentary medical evidence [because] the documentary record contain[ed] no evidence of a medical condition which would prevent the claimant from working eight-hours a day." (Tr. 19).

The ALJ's evaluation of the opinion evidence from Dr. Lundbland and Dr. McKee was deficient for several reasons. First, she failed to conduct the appropriate analysis for determining whether the opinions from Dr. Lundbland and Dr. McKee were entitled to controlling weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (noting that medical opinions from a claimant's treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record."). The ALJ concluded that the opinions were not supported by the documentary medical evidence, but in doing so, she failed to expressly explain what the inconsistencies were between the treating physicians' opinions and the other evidence in the record. *Id*. at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not

'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Second, the ALJ failed to properly analyze the weight to give the treating physician's opinions even if they were not entitled to controlling weight. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. In particular, the ALJ failed to discuss the factors set forth in 20 C.F.R. § 416.927: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ meant to reject the treating physicians' opinions entirely, she failed to "give specific, legitimate reasons for doing so[,]" *Id.* at 1301 [quotation marks omitted; citation omitted], so it would be "clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ also failed to properly consider the opinions of consulting neurologist Dr. Sherman B. Lawton, M.D., and medical expert Dr. Thomas N. Lynn, M.D., who reviewed

the record and testified at the administrative hearing regarding the claimant's functional limitations. Dr. Lawton examined the claimant to determine her neurological limitations in December 2004. The claimant complained of "persistent left homonymous hemianopsia," "discomfort and a vague sense of numbness in her left body," and reported a seizure disorder. Upon examination, Dr. Lawton noted "a crisp left homonymous hemianopsia" (Tr. 341) and "just a bit of left sided weakness[.]" The claimant could "walk safely without an assistive device[,]" and Dr. Lawton was unsure that her complaints of left-sided numbness were "100 % . . . organic." He did find that the claimant's "left hand dextrous movements might well be minimally impaired[,]" and that she should not drive. (Tr. 342). Dr. Lynn testified at the administrative hearing in October 2005. After reviewing the claimant's medical records, he opined that the claimant did not meet or equal a listing under the Listing of Impairments. He testified the claimant could lift and/or carry ten pounds occasionally and five pounds frequently; sit for an unlimited time if she could change positions or stand every thirty minutes; stand and/or walk continuously for thirty minutes and for a total of four hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, crawl; limited manipulation and gripping with the left hand; and no exposure to heights and no driving (Tr. 469). Dr. Lynn noted the claimant's manipulation limitations were only on the left and she should be able to "grasp strongly and lift with . . . the right arm." (Tr. 470-71).

The ALJ discussed both Dr. Lawton's examination of the claimant and Dr. Lynn's testimony regarding the claimant's functional limitations, but she failed to articulate the specific weight she attributed to their opinions. *See, e. g.*, *Hamlin v. Barnhart*, 365 F.3d

1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). To the extent the ALJ favored the opinions of Dr. Lawton and Dr. Lynn over those of the claimant's treating physicians, she should have explained why. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2) & 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. *See also Hamlin*, 365 F.3d at 1223 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."), *citing* 20 C.F.R. § 416.927(f)(2)(ii).

The claimant also objects to the ALJ's summary conclusion that "the claimant's allegations regarding her limitations [were] not totally credible[.]" (Tr. 18). Deference is generally given to an ALJ's credibility determination unless there is some indication that the ALJ misread the medical evidence taken as a whole. *Casias*, 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. Here, the ALJ neither mentioned the specific factors she considered as to the claimant's credibility nor linked her findings to any evidence in the record. Thus, as in *Kepler*, "the link between the evidence and credibility determination [was] missing" and all that is left is the ALJ's conclusion that the claimant's subjective complaints were not credible. 68 F.3d at 391.

The Commissioner offers plausible reasons for the ALJ's determination that the claimant's subjective complaints were not credible, but the Court may not consider them because the ALJ did not indicate she was doing so. *See Robinson*, 366 F.3d at 1084 ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). *See also Drapeau*, 255 F.3d at 1214 (noting that a reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). The Court may only decide whether the ALJ's stated reasons justify her conclusion as to the claimant's credibility, and here the ALJ stated none.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the opinions of the claimant's treating physicians and the agency physicians, and for a proper evaluation of the claimant's credibility. If the

ALJ subsequently determines that additional limitations should be included in the claimant's RFC, she should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2008.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**